IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| FN HERSTAL, S.A. and<br>FN AMERICA, LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No.: 6:22-CV-3011 |
| FIOCCHI MUNIZIONI S.p.A and<br>FIOCCHI OF AMERICA INC. | )<br>)<br>) | **Jury Trial Demanded** |
| Defendants. | )<br>)<br>) | |

# COMPLAINT

Plaintiffs FN Herstal, S.A. ("FNH") and FN America, LLC ("FNA") (collectively "Plaintiffs"), by and through their undersigned counsel, submit the following as their Complaint against Fiocchi Munizioni S.p.A. ("Fiocchi") and Fiocchi of America Inc. ("FOA") (collectively "Defendants"). Over decades of work FNH created the ammunition at issue in this matter, developed the market for the firearm and ammunition caliber and sold it in the U.S. via FNA and through its relationship with Fiocchi, which itself sells in the United States through Federal Cartridge, Inc. Despite a long and profitable partnership with Plaintiffs, Defendants have now sought to maximize their interests by wrongfully utilizing Plaintiffs' valuable intellectual property rights to sell competitive ammunition, destroying Plaintiffs' market for its products.

1. This is an action for misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; and misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450, *et seq.*

1

## PARTIES

2. Plaintiff FNH is a corporation organized under the laws of Belgium, with its principal place of business located at Voie de Liege 33, B-4040 Herstal, Belgium.

3. Plaintiff FNA is a limited liability company organized under the laws of Delaware, having a principal place of business located at 7950 Jones Branch Drive, Suite 602N, McLean, Virginia.

4. Defendant Fiocchi is a company organized under the laws of Italy, having its registered office at Via S. Barbara 4, I – 23900 Lecco, Italy.

5. Defendant FOA is a company incorporated under the laws of Missouri, having its registered office at 6930 N. Fremont Road, Ozark, Missouri.

## JURISDICTION AND VENUE

6. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because these claims arise under The Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*. This Court has supplemental jurisdiction over state law and common law claims pursuant to 28 U.S.C. § 1367(a).

7. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants, and Plaintiffs seek to recover damages in excess of $75,000.

8. This Court has personal jurisdiction over Defendant Fiocchi because Fiocchi routinely conducts business and develops products with and for Defendant FOA in Missouri. Further, the trade secrets that Defendant Fiocchi misappropriated, either alone or in concert with Defendant FOA, were provided and/or transmitted by Defendant Fiocchi to Defendant FOA at its facilities in Missouri and in this District.

9. This Court has personal jurisdiction over Defendant FOA because it is a company organized under the laws of Missouri and has a principal place of business in Missouri and in this District, and engaged in the unlawful acts identified herein in Missouri and in this District.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims occurred in and around Ozark, Missouri.

## FACTUAL BACKGROUND

11. FNH is a long-established and famous firearms and weapons manufacturer whose history dates back to 1889. FNH manufactures and distributes a full range of firearms, ammunition and accessories for military, law enforcement, marksmanship, sports shooting and for persons having an interest in acquiring such firearms and accessories.

12. FNH engages in designing, testing, manufacturing, marketing, and selling light and portable weapons, integrated weapon systems, ammunition, and associated products, with many such products sold worldwide, including items dedicated to military and law enforcement operations.

13. FNH continues to focus on innovation and product improvements, resulting in its products being renowned and used throughout the world.

14. FNA is a wholly owned subsidiary of FNH and provides marketing, business development, and sales for commercial, law enforcement, and U.S. Government customers in the United States. FNA manufacturers FN firearms, including handguns and sporting rifles for U.S. customers and law enforcement, and M4/M4A1 carbines, M16 rifles, MK46, MK48, M240, and M249 machine guns for the U.S. Military, at its Columbia, South Carolina production facility.

15. Fiocchi manufactures small caliber ammunition, including centerfire pistol ammunition.

16. Defendant FOA is a wholly-owned subsidiary of Fiocchi that manufactures ammunition at a facility in Ozark, Missouri.

**<u>Development of the FN 5.7 Weapon Systems</u>**

17. As early as 1987, the North Atlantic Treaty Organization ("NATO") sought to replace or supplement the 9x19mm Parabellum cartridge, which had been standardized as the "9mm NATO" cartridge for use in pistols and submachine guns.

18. Specifically, NATO was seeking a personal defense weapon ("PDW") caliber aiming at replacing the 9mm NATO cartridge with the PDW cartridge that had greater range, greater accuracy, and better terminal performance.

19. In order to respond to this need, FNH sought to design an entirely new weapon systems that included an entirely new cartridge and an entirely new submachine gun. A new pistol was also added as part of the weapon system.

20. The results of FNH's efforts were the innovative 5.7x28mm cartridge, the FN P90® submachine gun, the FN Five-seveN® semi-automatic pistol, and the FN PS90®, which is the semi-automatic version of the automatic FN P90®. These products included many pioneering features.

21. For example, the 5.7x28mm cartridge was developed as a wholly brand-new design. Such an approach was unusual in the firearms industry as most new cartridges are simply derived from a preexisting cartridge design or "parent case."

22. Historically, firearms cartridge designers were faced with two largely incompatible design goals: (1) minimizing the recoil impulse that results upon firing; and (2) maximizing stopping power, which depends on the ability to quickly dissipate energy upon target impact.

4

23. As a result, cartridges with low recoil tended to have low stopping power, making the cartridge less effective, while cartridges with high stopping power tended to have higher recoil, leading to increased shooter discomfort and difficultly placing subsequent shots on target.

24. But by incorporating novel and proprietary features into its new cartridge design, FNH was able to design the 5.7x28mm cartridge such that it provided the best of both worlds—low recoil <u>and</u> high "stopping power."

25. This new cartridge was initially offered to Plaintiffs' military customers, however FNH via FNA has subsequently introduced versions of the 5.7x28mm cartridge to the United States civilian market.

26. Currently, two types of FNH 5.7x28mm cartridges are available in the United States. The SS190 cartridge is restricted to law enforcement and military customers and includes design features such as a steel penetrator and an aluminum core. Military cartridges are also available for military customers, including the L191 Tracer round, the Sb193 Subsonic round, the FR199 Frangible round and the Blank round. The SS198 LF cartridge is designed specifically for law enforcement.

27. Beside those professional products, the SS196, SS197SR and SS195 LF cartridges are sporting cartridges that are or have been offered in the United States civilian market under the FN brand by FN America and/or by Vista, as an FNH licensed distributor until 30 November 2021. Cartridges SS196 and SS197 SR are designed with a lead core projectile and a polymer tip. The SS195 LF cartridge features a hollow point steel core projectile. Vista also commercialized the AE5728 American Eagle cartridge under the Federal brand on the US commercial market.

5

28. Certain confidential innovations embodied in the design and production processes of the 5.7x28mm cartridge are described in various technical documents and files created by FNH, collectively described as the 5.7x28mm technical data package ("the TDP").

29. The TDP includes proprietary FN information concerning the design, production, and varnishing of the cases for the 5.7x28mm cartridge that is not generally known or readily accessible to FN's competitors, including but not limited to: case's ignition channel dimensions, interior case dimensions, including their tolerances, case wall thicknesses, including their tolerances, case wall hardness values, including their tolerances, key aspects of the case varnishing (reference of the varnish, viscosity, application method for appropriate thickness of the varnish layer, and heat treatment).

30. At all relevant times, Plaintiffs have taken reasonable efforts to preserve the confidentiality of and preclude the unauthorized use and disclosure of its confidential information and TDP including, for example, by including confidentiality markings on documents containing the TDP, restricting access to the TDP, protecting computer systems containing the TDP by limiting computer access, and providing employee training concerning the protection of trade secrets and the TDP.

31. Additionally, FNH has through its development and subsequent improvements developed valuable know-how that improves the production and quality of its 5.7x28mm cartridge, including additional key elements such as control gauges. Plaintiffs have taken reasonable efforts to preserve the confidentiality of and preclude the unauthorized use and disclosure of its know-how including, for example, by including confidentiality markings on documents, restricting access to such information, methods and processes and protecting computer systems containing the know-how, and providing employee training concerning the protection of this know how.

6

32.     As such, Plaintiffs' TDP, and the know-how and design and methods detailed herein comprise Plaintiffs' valuable "Trade Secrets."

33.     Plaintiffs' Trade Secrets are highly valuable to Plaintiffs by virtue of the fact that they are not generally known or readily ascertainable by others, including Plaintiffs' competitors, by proper means.

**Standardization.**

34.     Interchangeability and safe operation are paramount for firearms cartridges. Several organizations maintain standards intended to ensure that firearms cartridges will fire safely in firearms chambered for that caliber. Specifically, to ensure that a cartridge will be safe for a firearm chambered for that caliber, certain cartridge parameters are standardized by organizations such as The Sporting Arms and Ammunition Manufacturers' Institute ("SAAMI"[1]) or the Permanent International Commission for Firearms Proofing ("C.I.P."[2]). They maintain specifications with cartridge information such as external cartridge dimensions, angles, and cartridge pressures. The North Atlantic Treaty Organization ("NATO"[3]) also creates and maintain small caliber ammunition standards, known as STANAGs ("STANdardization AGreements").[4]

---

[1] SAAMI is a U.S. organization proposing caliber standards, with voluntary compliance achieved by manufacturers in the U.S.
[2] CIP (Commission Internationale Permanente pour l'Epreuve des Armes à Feu Portatives) decisions have force of law in 14 countries including Germany, Austria, Belgium, Chile, UAE, Spain, Finland, France, Hungary, Italy, UK, Russia, Slovakia, Czech Republic, making firearms proofing and ammunition homologation mandatory according to CIP standards in these countries.
[3] NATO standardizes small caliber ammunition in order to guarantee on-the-field interchangeability of allied nations' ammunition.
[4] Some, but not all aspects of Plaintiffs' 5.7x28mm ammunition are CIP and STANAG registered. For example, Plaintiffs intentionally did not submit their 5.7x28mm ammunition for standardization with SAAMI because, among other things, doing so would require public disclosure of Plaintiffs' Trade Secrets, which would destroy the independent economic value derived from not being generally known to and not being readily ascertainable by others. For

7

35. Based on technical information solely provided by FNH, CIP standardized the 5.7x28mm caliber in 1993 and NATO standardized it in 2020 via the STANAG 4509. Although certain aspects of a cartridge's design are thus "standardized" many critical aspects of cartridge design and production are not specified in the relevant C.I.P., SAAMI or even NATO standards. This leaves room for cartridge manufacturers to innovate and add unique features and functionality to their cartridges.

**Defendants' Misappropriation of the TDP**

36. Fiocchi and FNH had a longstanding and beneficial commercial relationship dating back nearly two decades, including for trading of military ammunition in various other small calibers. FNH developed various firearms cartridges, and worked with Fiocchi to scale manufacturing of FNH's cartridge products.

37. For many years, Fiocchi and FNH worked together to enable the manufacturing FNH's 5.7x28mm cartridges at Fiocchi facilities subject to FNH's specifications and approvals, and confidentiality obligations.

38. As part of that relationship, FNH carefully disclosed to Fiocchi much, if not all, of FNH's Trade Secrets, including the TDP, concerning the 5.7x28mm cartridge.

39. This relationship was mutually beneficial to both parties and FNH understood that Fiocchi wished to remain an ongoing partner with FNH.

40. Thus, Defendants previously had access to the Trade Secrets as part of their longstanding relationship with Plaintiffs and their cooperation with Plaintiffs in the areas of ammunition production and manufacturing.

---

avoidance of doubt, the Trade Secrets misappropriated by Defendants are not included in the information made publicly available in Plaintiffs' CIP and STANAG registrations.

8

41. Defendants currently have copies of the TDP, and information derived from the TDP and other Trade Secrets, in their possession, custody, or control.

42. ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

43. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████

44. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████.

45. ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████.

9

46. This Trade Secret information is <u>not</u> part of the Plaintiffs' public registration for CIP or NATO standards.

47. Additionally, the 5.7x28mm cartridge production process includes a proprietary varnishing method designed to modify the coefficient of friction of the cartridge to contribute to reliable cartridge feeding and firearm cycling. FNH developed the varnishing process through extensive trial and error over two years by varying different materials, different application techniques, and different application environments.

48. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

49. But for Fiocchi's knowledge of the Trade Secrets, Fiocchi would not have known a coating process of any kind was required to modify the coefficient of friction in any way, and no such coating would have been utilized.

50. ██████████████████████████████████████████████████████████████████████████████████████████████.

51. ██████████████████████████████████████████████████████████████████████████████████████

52. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████.

53. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████.

54. SHOT Show is the largest and most comprehensive trade show for professionals involved with the shooting sports, hunting and law enforcement industries. It is the world's premier exposition of combined firearms, ammunition, law enforcement, cutlery, outdoor apparel, optics and related products and services.

55. SHOT Show attracts buyers from all 50 states and more than 100 countries. Historically, SHOT Show brings in more than 60,000 professionals in the shooting, hunting, outdoors and law enforcement industry. It is a trade only event that is closed to the public, enabling businesses, like FNH and Fiocchi, to introduce products, announce volume and timing expectations and solidify relationships with business partners, distributors, and manufacturers, and develop new business connections for their businesses. In fact, many attendees reserve meeting rooms to enable private discussions and negotiations with their business partners.

56. Fiocchi's introduction of its cartridges at SHOT Show will immediately harm FNH in numerous ways.

11

57. First, as noted above, SHOT Show is the most significant trade show in the industry for business to business promotion and sales where significant product deals are finalized. Any business deal for the sale of Fiocchi cartridges would necessarily come at the expense of FNH authorized cartridges, directly harming FNH.

58. In addition, it will be difficult for FNH to recapture customers from Fiocchi because they have and will most probably continue to seek to enter into long term agreements or letters of intent with Fiocchi.

59. Further, FNH will have no control about Fiocchi's further disclosure of the FNH Trade Secrets and it may reveal to business partners aspects of FNH's Trade Secrets to promote and prove the capabilities of its ammunition.

60. Finally, if Fiocchi directs manufacturing capacity away from FNH authorized ammunition and towards its own ammunition, it will negatively impact the availability of ammunition tested to work with FNH firearms.

61. Because 5.7x28mm ammunition is already in short supply, this will make it more difficult for consumers to locate ammunition that has been tested with their FN firearms. And because cartridge availability is one of the factors consumers consider when purchasing a firearm, the reduced availability of FN authorized ammunition will negatively impact sales of FN firearms.

## COUNT I

**Misappropriation Under the Defend Trade Secrets Act**
**18 U.S.C. § 1836**

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 62 of the Complaint as if fully set forth herein.

63. The Trade Secrets at all relevant times constitute trade secrets as defined by the Defend Trade Secrets Act ("DTSA") in that they derive independent economic value from not

12

Case 6:22-cv-03011-RK   Document 1-2   Filed 01/13/22   Page 12 of 17

being generally known to and not being readily ascertainable by others, including Plaintiffs' competitors, and because Plaintiffs take significant precautions to maintain their confidentiality.

64. As described above, the Trade Secrets related to the design and manufacture of Plaintiffs' products namely, its 5.7x28mm firearms cartridges, which are used in and intended for use in interstate or foreign commerce.

65. At all relevant times, and as outlined in this Complaint, Plaintiffs have undertaken reasonable efforts to preserve the confidentiality of and preclude the unauthorized use and disclosure of its Trade Secrets.

66. Defendants misappropriated the Trade Secrets willfully and in bad faith, using them for unauthorized purposes, including for the manufacture of competing 5.7x28mm cartridges utilizing and derived from the Trade Secrets.

67. Upon information and belief, Defendants have and will continue to use Plaintiffs' confidential and proprietary Trade Secrets for their own benefit and to unfairly compete against Plaintiffs by developing a competitive 5.7x28mm cartridge product to Plaintiffs' detriment.

68. Defendants' misappropriation of the Trade Secrets has damaged and will continue to damage Plaintiffs through, among other things, lost sales and lost customers and other loses outlined herein, in an amount to be proven at trial. Defendants have and will continue to be further damaged in the form of loss of consumer goodwill based on a false association of Defendants' inferior cartridges with Plaintiffs, disclosure of the Trade Secrets to other third parties, lost manufacturing capacity, and other harms.

69. Plaintiffs will continue to be damaged by Defendants' acts unless they are required to cease the unlawful and unfair use of the Trade Secrets.

70. There is no adequate remedy at law for Defendants' continued unlawful use and/or distribution of the Trade Secrets misappropriated from Plaintiffs.

71. Pursuant to 18 U.S.C. § 1836, Plaintiffs are entitled to injunctive relief and damages, including but not limited to actual losses, unjust enrichment of Defendants, exemplary damages, and attorneys' fees.

## COUNT II

### Misappropriation Under the Missouri Uniform Trade Secrets Act
### Mo. Rev. Stat. § 417.450 *et seq.*

72. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 73 of the Complaint as if fully set forth herein.

73. Plaintiffs' Trade Secrets derived from the confidential relationship between Fiocchi and FNH related to the manufacture of FNH's 5.7x28mm cartridges constitutes trade secrets as defined by the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450 *et seq.*, because the Trade Secrets derive independent economic value from not being generally known to and not being readily ascertainable by Plaintiffs' competitors and because Plaintiffs take precautions to maintain the confidentiality and secrecy of that information.

74. Plaintiffs have undertaken reasonable efforts to preserve the confidentiality and preclude the unauthorized use and/or disclosure of the Trade Secrets.

75. Defendants misappropriated Plaintiffs' Trade Secrets without Plaintiffs' permission and for purposes not authorized by Plaintiffs.

76. Defendants, with knowledge of their duty to maintain the secrecy and/or limit the use of the Trade Secrets, have and will develop and produce competing 5.7x28mm cartridges improperly using Plaintiff's Trade Secrets. Defendants are making such improper use of the Trade

14

Secrets derived from the confidential working relationship with FNH, willfully and maliciously and without FNH's consent.

77. Defendants' unauthorized, willful, and malicious use of the Trade Secrets constitutes misappropriation of trade secrets in violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450 *et seq.*

78. As a direct and proximate cause of the unlawful conduct of Defendants, Plaintiffs have suffered, and will continue to suffer, irreparable harm and damages in an amount to be proven at trial, and Defendants, upon information and belief, have been unjustly enriched by the misappropriation and use of the Trade Secrets.

79. Plaintiffs will continue to be damaged by Defendants' acts unless they are required to cease the improper and unfair use of the Trade Secrets.

80. There is no adequate remedy at law for Defendants' continued unauthorized, unlawful and unfair use and/or distribution of the Trade Secrets misappropriated from Plaintiffs.

81. Unless preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer immediate and irreparable injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.

82. Pursuant to Mo. Rev. Stat. §§ 417.450 *et seq.*, Plaintiffs are entitled to: (1) compensatory damages including the greater of its actual losses caused by Defendants' misappropriation or unjust enrichment caused by the misappropriation or a reasonable royalty for Defendant's unauthorized disclosure or use of its Trade Secrets; and (2) punitive damages and attorneys' fees pursuant to Mo. Rev. Stat. § 417.457.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court (i) enter a preliminary and permanent injunction enjoining Defendants from using, accessing, relying on, maintaining, referencing, or otherwise utilizing the Trade Secrets in the United States civilian market, and enjoining Defendants from manufacturing, importing, exporting, offering for sale or promoting in the United States civilian market 5.7x28mm ammunition improperly implementing, relying, or otherwise incorporating any of Plaintiffs' Trade Secrets; (ii) enter judgment against Defendants and award Plaintiffs actual, statutory, treble, exemplary, enhanced, and/or punitive damages, in an amount exceeding $75,000 to be proved at trial on the claims made herein; (iii) award Plaintiffs their costs and attorneys' fees incurred herein; (iv) award Plaintiffs pre-judgment and post-judgment interest; and (v) enter an order for such other relief as the Court deems appropriate.

Date: January 13, 2022

Respectfully submitted,

LATHROP GPM LLP

By: */s/ Eric D. Sidler*
Eric D. Sidler, MO # 69531
Timothy J. Hadachek, MO # 70985
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
eric.sidler@lathropgpm.com
timothy.hadachek@lathropgpm.com

Of Counsel
WILLIAMS MULLEN
Robert C. Van Arnam
N.C. Bar No. 28838
*(Pro hac motion to be filed)*
Andrew R. Shores
N.C. Bar No. 46600
*(Pro hac motion to be filed)*
301 Fayetteville Street
Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4055
Fax: (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

Clinton B. Brannon
VA Bar No. 72340
*(Pro hac motion to be filed)*
Boro Tower
8350 Broad Street
Suite 1600
Tysons, VA 22102
Telephone: 703.760.5200
Fax: 703.748.0244
cbrannon@williamsmullen.com

48127111v2

17

Case 6:22-cv-03011-RK   Document 1-2   Filed 01/13/22   Page 17 of 17